**CASE NO. 25-3151**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

AUSTIN BURKE,

        Petitioner - Appellant,

vs.

CYNTHIA DAVIS,

        Respondent - Appellee.

---

Appeal from the United States District Court
Northern District of Ohio,

Honorable James G. Carr

---

**BRIEF OF PETITIONER-APPELLANT**

---

Respectfully submitted,

DEBRA K. HAMPTON, OBA # 13621
Hampton Law Office, PLLC
3126 S. Blvd., # 304
Edmond, OK 73013
Phone:     (405) 250-0966
Fax:       (866) 251-4898 (fax)
E-Mail:    debbie@hamptonlaw.net
Counsel for Petitioner

Oral Argument Not Requested
April 7, 2025

**CORPORATE DISCLOSURE STATEMENT**
**<u>PURSUANT TO FRAP 26.1 and 6 Cir. R. 26.1</u>**

There is no nongovernmental corporate party involved.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................4

CASES ............................................................................................4

STATUTES ....................................................................................6

STATEMENT OF ISSUES PRESENTED ..........................................7

Whether fair minded jurist could disagree that a Certificate of Appealability should be issued regarding the resolution of the District Court's Determination that Petitioner's Habeas Petition is time barred when there is clear evidence that Petitioner is factually innocent.

STATEMENT OF RELATED CASES ....................................................7

STATEMENT OF JURISDICTION ......................................................7

PROCEDURAL HISTORY ...............................................................7

INTRODUCTION ...........................................................................14

STANDARD FOR ISSUANCE OF COA ............................................19

Fair minded jurist should disagree that a Certificate of Appealability should be issued regarding the resolution of the District Court's Determination that Petitioner's Habeas Petition is time barred when there is clear evidence that Petitioner is factually innocent.

ARGUMENT AND AUTHORITY ......................................................21

Facts supporting Petitioner's claims he is entitled to both equitable tolling and an equitable exception based upon factual innocence where his conviction resulted from non-harmless constitutional error. ................. 23

CONCLUSION ..............................................................................40

CERTIFICATE OF COMPLIANCE ..................................................41

CERTIFICATE OF DIGITAL SUBMISSION  ....................................................42

CERTIFICATE OF SERVICE  ..............................................................................42

# TABLE OF AUTHORITIES

## CASES

*Abela v. Martin*, 348 F.3d 164 (6th Cir. 2003)...................................................... 11

*Berger v. U.S.,* 295 U.S. 78, 88 (1935)................................................................ 38

*Brady v. Maryland*, 373 U.S 83, 88 (1963) ....................................................... 39

*Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) ............................................ 30

*Brumfield v. Cain,* 576 U.S. 305 (2015) ............................................................ 35

*Bruton v. U.S.,* 391 U.S. 123, 135 (1968).......................................................... 31

*Carpenter v. U.S.,* 585 U.S. ___, 138 S.Ct. 2206 (2018) ............................ 10, 29

*Cullen v. Pinholster,* 563 U.S. 170, 205, 131 S.Ct. 1388 (2011) ..................... 35

*Day v. McDonough,* 547 U.S. 198, 205, 213 (2006)......................................... 12

*Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974) ..................................... 38

*Edwards v. Vannoy*, 141 S.Ct. 1547, 1554 (2021) ........................................... 29

*Fears v. Bagley*, 462 F. App'x 565, 574 (6th Cir. 2012) ................................... 35

*Giglio v. U.S.*, 405 U.S. 150, 154 (1972) .......................................................... 38

*Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)................................................ 29

*Herrera v. Collins*, 506 U.S. 390, 404 (1993) .................................................. 12

*Holland v. Florida*, 560 U.S. 631 (2010) ......................................................... 11

*Hopt v. Utah,* 120 U.S. 430, 438 (1887)............................................................ 31

*Hurles v. Ryan,* 752 F.3d 768, 790-91 (9th Cir. 2014)...................................... 35

*Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009)........................................... 10

*Kotteakos v. United States*, 328 U.S. 750, 776 (1946) ...................................... 30

*Lutwak v. U.S.,* 344 U.S. 604, 619 (1953) ........................................................ 31

*McCleskey v. Zant,* 499 U.S. 467, 502 (1991)................................................... 13

*McCray v. Vasbinder*, 499 F.3d 568, 572 (6th Cir. 2007) .................................. 36

*McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) ............................................ 12

*Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000) .............................. 22

*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) ........................................... 20

*Napue v. Illinois*, 360 U.S. 264, 269 (1959) ................................................. 38

*Neder v U.S.*, 527 U.S. 1, 8 (1999) .............................................................. 40

*Northrop v. Trippett*, 265 F.3d 372, 377 (6th Cir. 2001) ............................... 27

*Panetti v. Quarterman*, 551 U.S. 930, 954 (2007) ....................................... 35

*Peters v. Kiff,* 407 U.S. 493, 502 (1972) ...................................................... 40

*Riley v. Deeds*, 56 F.3d 1117, 1120 (9th Cir. 1995) ...................................... 40

*Sherwood v. Prelesnik*, 579 F.3d 581 (6th Cir. 2009) .................................. 11

*Slack v. McDaniel*, 529 U.S. 473, 481 (2000). ....................................... 20, 21

*Smith v. Phillips*, 455 U.S. 209, 221-222 (1982) .......................................... 40

*State v. Burke,* 162 Ohio St. 3d 1431, 166 N.E.3d 1245 ....................... 9, 25, 30

*State v. Burke,* Nos. 2018-T-0032, 2018-T-0035, 2019 WL 2172718 at *1-2
(Ohio Ct. App. May 20, 2019) ....................................................................... 8

*State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955) ....................... 33

*State v. Sorgee*, 54 Ohio St. 2d 464, 377 N.E.2d 782 (1978) ....................... 33

*State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997) ..................................... 32

*Stermer v. Warren*, 360 F. Supp. 3d 639 (E.D. Mich. 2018) *aff'd,*
    959 F.3d 704 (6th Cir. 2020) .............................................................. 22, 28

*Stermer v. Warren,* 959 F.3d 704, 719 (6th Cir. 2020) ......................22, 28, 34

*Strickland v. Washington*, 466 U.S. 668, 690 (1984) .................................... 40

*Taylor v. Maddox,* 366 F.3d 992, 1001 (9th Cir. 2004) ................................. 35

*Teague v. Lane*, 489 U.S. 288, 311 (1989) ................................................... 29

*Tharpe v. Sellers*, 138 S.Ct. 545, 546 (2018) .................................................... 21

*Tibbs v. Florida*, 457 U.S. 31, 45, 102 (1982) ................................................... 32

*U.S. v. Atkinson*, 297 U.S. 157 (1936) .............................................................. 38

*U.S. v. Olano*, 507 U.S. 725, 736 (1993) .......................................................... 38

*Washington v. Hofbauer,* 228 F.3d 689, 700 (6th Cir. 2000) ............................ 38

*Weaver v. Massachusetts*, 582 U.S.___, 137 S.Ct. 1899 (2017) ....................... 40

*Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) ............................................... 40

## STATUTES

28 U.S.C. §2241(a) ............................................................................................... 7
28 U.S.C. § 2244(d)(l) ........................................................................................ 13
28 U.S.C. § 2253(c)(2) ........................................................................................ 20
28 U.S.C. §§ 2254(D) (1-2) ................................................................................ 30

## STATEMENT OF ISSUES PRESENTED

**Whether fair minded jurist could disagree that a Certificate of Appealability should be issued regarding the resolution of the District Court's Determination that Petitioner's Habeas Petition is time barred when there is clear evidence that Petitioner is factually innocent.**

## STATEMENT OF RELATED CASES

There are no related appeals.

## STATEMENT OF JURISDICTION

The District Court had jurisdiction to adjudicate the merits of the Appellant's claims raised in the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254.

United States District Judge, James G. Carr, issued an Order Denying Appellant's Petition for the Writ of Habeas Corpus, Dismissing the action and denying a Certificate of Appealability. (ECF no. 18, PageID # 2117-2124) On the same date, a separate judgment was issued against the Appellant. (ECF no.. 19, PageID # 2125) Appellant timely filed a Notice of Intent to Appeal. (ECF no. 20, PageID # 2126)

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 2241(a).

## PROCEDURAL HISTORY

### State court proceedings

A Trumbull County, Ohio jury found Petitioner guilty on six Counts, including Aggravated Murder and Aggravated Robbery. (ECF no. 8-1, PageID #: 219). Petitioner pursued a direct appeal of his conviction to the Eleventh District Court of Appeals,

raising five Assignments of Error. (ECF no. 8-1, PageID #: 274-83).

I.    The Trial Court erred in taking evidence of cell tower location data that the state searched and seized without a warrant.

II.   The Trial Court erred in hearing a separate unrelated robbery with Burke's murder charge.

III.  The jury returned a verdict against the manifest weight of the evidence.

IV.   The combined effect of any two or more errors above renders the cause reversible under the cumulative error doctrine.

V.    The Trial Court erred in sentencing Burke to maximum consecutive terms of imprisonment as to his weapon-in-detention conviction.

The Appellate Court affirmed Petitioner's convictions remanded the case to the trial court to incorporate consecutive sentences in the entries and to correct an error in the firearm specification. *State v. Burke,* Nos. 2018-T-0032, 2018-T-0035, 2019 WL 2172718 at *1-2 (Ohio Ct. App. May 20, 2019) (ECF no. 8-1, PageID #: 381-429).

Petitioner sought further review. (ECF no. 8-1, PageID #: 430). The Ohio Supreme Court declined to hear the case. *State v. Burke,* 157 Ohio St. 3d 1406, 131 N.E.3d 75 (2019). (ECF no. 8-1, PageID #: 466).

On May 16, 2019, Petitioner timely filed a Petition for Post-Conviction Relief. (ECF no. 8-1, PageID #: 467-619). The State Court concluded Petitioner presented no genuine issues of material fact, the court granted summary judgment for the State and denied Petitioner's motion for a new trial. Case No. 2017-CR-0403 (Ohio CCP Feb.

27, 2020) (ECF no. 8- 1, PageID #: 779-86).

Petitioner appealed. (ECF no. 8-1, PageID #: 787-805). Once again, the Eleventh District Court of Appeals affirmed the denial of state post-conviction relief. *State v. Burke,* No. 2020-T-0013, 2020 WL 7023598 (Nov. 30, 2020). (ECF no. 8-1, PageID #: 854-71).

Petitioner sought further review. (ECF no. 8-1, PageID #: 872-74). But on April 16, 2021, the Ohio Supreme Court again declined to do so. *State v. Burke,* 162 Ohio St. 3d 1431, 166 N.E.3d 1245 (2021). (ECF no. 8-1, PageID #: 927). However, two judges dissented. (*Donnelly*, J., dissents, with an opinion joined by Brunner, J). The dissent recognized:

> {¶ 5} To support his claims of ineffective assistance of trial counsel and other constitutional deprivations, appellant, Austin Burke, submitted the affidavits of six other people, none of whom appear to have testified at Burke's trial. *Id*. at ¶ 23-34. Among the many factual issues raised in those affidavits is whether a different person had confessed to committing the primary offense for which Burke was tried and convicted: the aggravated murder of Brandon Sample. *Id*. at ¶ 2, 23. The trial court was apparently curious about the veracity of the affiant who had made that assertion, but rather than ordering a statutorily required hearing to test the veracity of the facts alleged, the court conducted an in-camera review of the juvenile-detention records relating to that alternative suspect, *Id.* at ¶ 9. The court did not allow the state or the defense to review those materials, despite their being central to the court's finding that the affiant's claim was not true. *Id*. at ¶ 35. The trial court similarly rejected every other affidavit as "problematic" and summarily denied Burke's petition for post-conviction relief without first holding an evidentiary hearing.

> {¶ 6} One of the worst injustices that we judges can perpetuate is to let an innocent person remain in prison. Although it is disturbing to think that a wrongful conviction might have happened on our watch, we cannot and

9

should not be so quick to deny that possibility. Post-conviction proceedings are an important safeguard against wrongful convictions, and we need to ensure that petitioners are afforded a meaningful opportunity to attempt to prove cogent claims at evidentiary hearings. If a petitioner's claims appear to be true and an innocent person might be in prison, we need to set aside our dogged commitment to finality and make room to correct that injustice. The standards currently employed by Ohio's courts do not make such room.

### Proceedings in Federal Habeas

Petitioner filed a Petition for Habeas Corpus under 28 U.S.C. § 2254 on July 19, 2022, through the undersigned. (ECF no. 1, PageID #: 1) Petitioner raised these propositions:

I.   The State Court's resolution of the illegally seized information of cell tower data was objectively unreasonable in light of *Carpenter v. U.S.*, 585 U.S. ___, 138 S.Ct. 2206 (2018) and previous decisions from the United States Supreme Court.

II.  The trial court erred in hearing a separate unrelated robbery with Petitioner's murder charge which was unduly prejudicial and the state court's resolution of the claim was objectively unreasonable under 28 U.S.C. §, § 2254(d) (1-2)

III. The jury returned a verdict against the manifest weight of the evidence because the evidence is insufficient to establish guilt beyond a reasonable doubt.

IV.  Trial Counsel was ineffective under the Sixth and Fourteenth Amendments for failing to investigate and/or the evidence was unavailable.

V.   Prosecutorial misconduct for failing to correct testimony it would have reason to believe was false.

VI.  Petitioner was deprived of his right to confront witnesses as the affidavits set forth material facts and demonstrate a denial of fundamental fairness.

VII.  Trial Counsel was ineffective for failing to object to Juror Misconduct.

The Magistrate ordered Petitioner and Respondent to file contemporaneous briefs on a specific issue—timeliness of the Petition. (ECF no. 5, PageID #: 46-47) On September 28, 2022, Petitioner timely filed his Brief. (ECF no. 7, PageID #: 51-56). Respondent did not.

Petitioner argued that the Petition was timely where Petitioner was sentenced on March 27, 2018, and Petitioner timely appealed the judgment, which the ultimate decision affirmed the Judgment on May 20, 2019. While Petitioner's Direct Appeal was pending, he filed for collateral review in the State District Court on May 16, 2019. A properly filed application would toll the AEDPA where 365 days or fewer remained. The AEDPA does not begin to run until after 90 days have expired, during which time a Petition for Writ of Certiorari can be filed in the United States Supreme Court. *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009); *See also Abela v. Martin*, 348 F.3d 164 (6th Cir. 2003)

Petitioner argued that because he sought collateral review while his Direct Appeal was pending, his AEDPA was still tolled for 90 additional days for seeking certiorari from the United States Supreme Court, preceding post-conviction litigation in State Court. *Sherwood v. Prelesnik*, 579 F.3d 581 (6th Cir. 2009)

Petitioner argued the Ohio Supreme Court rejected the appeal with two judges dissenting on April 16, 2021, as mentioned above. Petitioner argued that the AEDPA

did not begin to run until July 16, 2021. Petitioner filed his Habeas Petition on July 19, 2022 (two days after the expiration of the AEDPA). Petitioner argued that an extraordinary circumstance prevented timely filing because Counsel had an application for admission to the Court pending and could not file the Petition until she was sworn in to the Court and access was granted to file documents through PACER.

Petitioner argued that he should have been entitled to equitable tolling, where counsel was diligently pursuing Petitioner's claims and Petitioner had the right to his choice of counsel. Because the AEDPA's "statute of limitations defense ... is not 'jurisdictional,'" *Holland v. Florida*, 560 U.S. 631 (2010) (citing *Day v. McDonough,* 547 U.S. 198, 205, 213 (2006)), there are exceptions, particularly under the actual innocence gateway. A Petitioner may be entitled to equitable tolling of the statute of limitations if he demonstrates "(1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.*

Petitioner argued that the Court should have applied the actual innocence gateway because he presented clear and convincing evidence, which provides an exception to the AEDPA's one-year statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) [A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims ... on the merits notwithstanding the existence of a procedural bar to relief." *Id,* at 392. "This rule, or fundamental miscarriage of justice

exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Herrera v. Collins*, 506 U.S. 390, 404 (1993) (quoting *McCleskey v. Zant,* 499 U.S. 467, 502 (1991)).

On October 6, 2022, Respondent filed the Return of Writ raising the argument that the Petition is time-barred. (ECF no. 8, PageID #: 57-135). On November 21, 2022, Petitioner filed his Traverse. (ECF no. 11, PageID #: 2015-2029).

On October 1, 2024, Magistrate Judge Clay filed his Report & Recommendation. (ECF no. 12, PageID #: 2030-2069). The Magistrate recommended that the Petition be dismissed because Petitioner's Counsel failed to file it within the one-year statute of limitations under 28 U.S.C. § 2244(d)(l). (ECF no. 12, PageID 2031, 2068).

Petitioner filed Objections to that Report. (ECF no. 14, PageID #: 2072-2082) and attached additional evidence that was not previously discoverable. (ECF no. 14-1, PageID #: 2083-2092) However, there were other facts argued in both the State Court and in the Habeas Petition involving a confession of Preston Whitacre.

The District Court Ordered the Respondent to file a Response, which was filed. (ECF no. 16, PageID #: 51-56). Petitioner filed a Reply. (ECF no. 17, PageID #: 2103-2107) and two additional attachments (ECF no. 17-1, 17-2, PageID #: 381-429). These attachments were not available at the time the Habeas Petition was filed. To show that

13

Petitioner has been diligently pursuing his rights, Jamie Sell, Burke's mother, filed a request under the Freedom of Information Act (FOIA).

United States District Judge James G. Carr issued an Order Denying Appellant's Petition for the Writ of Habeas Corpus, Dismissing the action, and denied a Certificate of Appealability. (02/19/25  Order, R. 18, PageID #; 2117-2124) Further facts are discussed in support thereof.

## INTRODUCTION

This case involved three separate matters: a homicide, an unrelated robbery, and an unrelated matter of a weapon in a detention facility. In the instant Habeas action, this case only addresses the homicide case which involved the June 15, 2017, discovery of Kenneth Brandon Hayes Sample ("Decedent"). The robbery of Pizza Joe's restaurant was an unrelated incident that occurred on June 20, 2017. The weapons-in-detention involved Petitioner having a weapon while awaiting trial on the foregoing charges in the Trumbull County Jail, which is a violent place.

The homicide and the Pizza Joe's matter were heard by the grand jury and billed them in one indictment as alleged in Case No. 2017 CR 00403. The grand jury returned charges of Aggravated Murder under R.C. 2903.01, Aggravated Robbery under R.G. 2911.01, Tampering with Evidence under R.C. 2921.12, and Weapons under Disability under R.C. 2921.12. Petitioner was tried and convicted on all counts and sentenced to a total term of imprisonment of 47 years with eligibility for parole.

Turning to the substantive facts, the conviction rests on three categories of evidence. The first category includes a handful of what the defense aptly referred to as "teenage" witnesses. [Tr. at 188] The second category is inconclusive forensic evidence. The third category is a warrantless search of cell tower location data.

The adolescent witnesses recount a get-together at a Mason St. residence and variously testify to whether or not Petitioner (a) had a firearm then, if ever, and (b) discussed a homicide then, if ever. The recollections all differ on these two points, with witnesses providing multiple versions of events to the police and the jury.

The testimony of Josh White, then 21 at the time of the incident, admitted that he was with Decedent in the late hours of June 11, 2017. [Tr. at 196-205.] White testified that Sample told him he was going to hang out with the Petitioner and that the Petitioner would give him $1,000.00 USD. [Tr. at 203] White allegedly never met the Petitioner, despite the Petitioner having thoroughly described White. When the police interviewed White, he had a cut on his hand. [Tr. at 206] He had markings on his knuckles, he claimed were from punching a bed post. *Id.* He had muddy shorts that were in Sample's vehicle, which were never examined by the police. *Id.* White testified that Sample never did and never would do heroin. [Tr. at 203] [*c.f.* Tr. at 260, Sample snorted heroin and fentanyl].

Brittani Mertin testified that she knew Petitioner through Ricky Roupe. [Tr. at 233] She stated that she was familiar with a .22 firearm. [Tr. at 236] Mertin testified

15

she had an adolescent fling with Petitioner but that they never had sexual intercourse. [Tr. at 238] She testified Petitioner inquired by text about a 9 mm handgun magazine, and that neither she nor anyone else could find it. [Tr. at 247] Petitioner never mentioned Sample to her or anything that would indicate a homicide. [Tr. at 248-2499]

Meredith Loges, then 18 years old, testified to attending church with and dating the Petitioner. [Tr. at 220–230] She testified to having seen the Petitioner rarely with a marbled .22 handgun. She could not testify to periods of time. [Tr. at 229] Petitioner never said a disparaging word about Sample. [Tr. at 232]

Nathan Moats, then 16 at the time he testified, stated that Petitioner related a shooting of Sample, but that he knew no details of the alleged incident. [Tr. at 255] Moats had discussed the homicide with his friends at that point and seen news coverage of it. [Tr. at 265] Moats claimed Petitioner buried the body, even though the body was not buried. [Tr. at 266] Thus, Moats' testimony was not corroborated by evidence or the record.

Ricky Roupe, age 15 at the time of his testimony, stated that he grew up with Petitioner and that on June 11-12, Petitioner, himself, and several others were at his grandmother's home on Mason St. [Tr. at 271, 81] He went to bed, slept until the morning. Petitioner woke him up at 9 a.m. "to get his (Petitioner's) clothes and stuff." *Id.* Roupe stated Petitioner told him nothing else. [Tr. at 272] Thereafter, according to Roupe, "Well, I seen everything on Facebook about Brandon Sample's murder and

16

then I see that Austin-that he was getting blamed for it. So, I asked him if it was true, and he told me yes. And then he told me how he did it and everything." *Id.*

The police interviewed Roupe twice, June 16 and June 23. [Tr. at 278–79] Roupe admitted on cross-examination he lied in the first interview. [Tr. at 279] At that interview, he said nothing about Petitioner telling him anything. *Id.* He told the police that Petitioner came to Roupe's grandmother's house around 3 pm, by himself, without a gun, that Roupe went to bed at 11 pm, and that Petitioner was there the entire evening. [Tr. at 280]

Deider Keener, then 19 when se testified that at the Mason St. house, she heard Petitioner talk about robbing someone-that he had plans to rob someone for heroin. [Tr. at 296, 302] She identified the unique .22. [Th. at 298] But when the police interviewed her, Keener stated she had only seen Petitioner six times in her life, never in possession of a firearm, and mentioned nothing about Decedent, let alone robbing him, let alone killing him. [Tr. at 308-09]

Hayle Roupe, then 17, testified to knowing Petitioner through her cousins. [Tr. at 398] Despite testifying to having seen Petitioner with a .22, recalling the meeting of several people at Mason St., and claiming to have heard Petitioner talk of a homicide, she never mentioned those details concerning Sample, and she vacillated on if/when/and whether Petitioner ever produced a firearm. [Tr. at 415-416]

17

The cellular evidence in this case was admitted into evidence without a warrant and over a defense Motion to Suppress. To provide some background on cellular site location data, whenever a cell phone connects to a radio antenna or cell site, it generates a time-stamped log, known as CSLI, which wireless carriers collect and store as business records, and/or provide to law enforcement, depending on one's perspective. [*Infra*] A review of the transcript by word search reveals that the State refers to cellular towers in its opening statement [Tr. at 167 (lx), 168 (4x), 169 (4x), 170, (2x) 174(lx)] and at least 100 references in the transcripts. Cellular site location data was crucial to the State because it was confusing to the jury.

Looking at the forensic evidence, there is no dispute that Sample died, and no expert could provide the type, class, or caliber of weapon that killed him. [Tr. at 914] No one could provide a specific time or location of death. No physical evidence linked the Petitioner to the alleged offense. Even though DNA testing was done, there was no DNA evidence implicating the Petitioner with any firearm. [Tr. at 534] Much of the physical evidence—potentially exculpatory—was no longer available with the internment of the decedent's body. [Tr. at 713- 714]

Next, discussing the Pizza Joe's robbery, the police responded to a call about a masked robber at a Pizza Joe's wielding a small handgun [Tr. at 833], and they interviewed witnesses. Testimony came from Lea Smith, Donovan Bunner, Justin Borawiec, and Melanie Engel, all of whom testified to different versions of whether

Petitioner displayed any behavior consistent with robbing Pizza Joe's.

Leah Smith, then 15 years old, testified that she, the Petitioner, and others were swimming at Willow Lake. They went back to Mel's apartment, and Mel's cat escaped. They left the apartment and went in search of the cat. The police arrived shortly after. According to Smith, Petitioner came in with a lot of money. [Tr. at 740-46]

Donovan Bunner, then 17 years old, testified that he was swimming with the Petitioner and others at Willow Lake. Bunner testified that they went back to Mel's apartment and his cat escaped. [Tr. at 750] They went out to look for it. [Tr. at 752-753] The police arrived. [Tr. at 753] Petitioner allegedly gave a false name, Nathan. *Id.* Bunner, however, affirmed that Petitioner did not come "...back with a whole bunch of money and coun[t] it in front of [Bunner] and [Leah]." [Tr. at 757] (The testimony from Justin Borawiec was similar.)

Melanie Engel, then 20 years old at the time of her testimony, testified similarly, and added that she found cash in a box of hair dye and a firearm, inexplicably after the police left. [Tr. at 798, 813] She feigned no idea as to how it got there. This was the same fireman that the authorities tested for DNA because it was allegedly connected to the homicide, but the results were inconclusive. [Tr. at 534-535]

## STANDARD FOR ISSUANCE OF COA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") has established standards that a court of appeals must meet before issuing a Certificate of

Appealability (COA) to review a denial of Habeas relief in the District Court. Congress mandated that a prisoner seeking relief under 28 U.S.C. § 2254 has no automatic right to appeal a District Court's denial or dismissal of the Petition. Instead, Appellant must first seek and obtain a COA. The Supreme Court held "In resolving this case we decide again that when a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition, the Court of appeals should limit its examination to a threshold inquiry into the underlying merit of his claims." *Slack v. McDaniel*, 529 U.S. 473, 481 (2000).

A COA may be issued only if the Appellant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A Petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the District Court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); see *Slack* at 484. "When the District Court denies a Habeas Petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the District Court was correct in its procedural ruling." *Slack*, at 484. This Court should determine that the District Court's determination is debatable among jurists as to

20

whether Petitioner is entitled to equitable tolling or an equitable exception to the timeliness of his Petition. It is clear from the record that Petitioner has been timely pursuing his claims. Petitioner discusses the following to support his claims.

**Fair minded jurists should disagree that a Certificate of Appealability should be issued regarding the resolution of the District Court's Determination that Petitioner's Habeas Petition is time barred when there is clear evidence that Petitioner is factually innocent.**

### ARGUMENT AND AUTHORITY

Here, Petitioner has argued that he is actually innocent of the underlying allegations and that his convictions result from nonharmless constitutional violations. Petitioner asserts that fair-minded jurists should find it debatable whether the District Court's denial was based solely on a time bar. Review of the denial of a COA is undoubtedly not limited to grounds expressly addressed by the court whose decision is under review. However, in the unusual circumstances of a case such as this, where it should be debatable among reasonable jurists, see *Tharpe v. Sellers*, 138 S.Ct. 545, 546 (2018) that a nonjurisdictional procedural hurdle should be subjected to tolling or an exception.

Petitioner entered a plea of not guilty and maintains that he did not murder 22-year-old Kenneth Brandon Hayes Sample ("Brandon"). Petitioner provided a rebuttal to the factual presumption of the correctness of the State Court record, and moreover, the Federal District Court's analysis, as it could not have been a merit-based

determination because it relied on evidence that was not part of the record. "If a state court's finding rests on thin air, the petition will have little difficulty satisfying the standards for relief under § 2254." *Stermer v. Warren*, 360 F. Supp. 3d 639 (E.D. Mich. 2018) *aff'd,* 959 F.3d 704 (6th Cir. 2020); *Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000).

Here, the State responded in post-conviction with an affidavit by Rich Owen, Director of Trumbull County Juvenile Division, stating that he relied upon certain records that never became part of the record. Sell filed an open records request seeking the affidavit allegedly prepared by Rich Owen in connection with this case. In that action, the Trumbull County Juvenile Division informed Ms. Sell "that no such records were created by Mr. Owen and further that the public office had no records matching the request." *See* (ECF no. 17-1, PageID #: 2108- 2113) (Dated November 1, 2024.) Ms. Sell's request was denied, and she appealed.

On December 30, 2024, in the Ohio Court of Claims, Judge Lisa L. Sadler denied Ms. Sell's request because she did not provide sufficient proof that the Affidavit she was seeking existed. (ECF no. 17-2, PageID #: 2114- 2116) The judge in the court of claims stated:

> In support of her objections Requester attached a Report and Recommendation from a case in the United States District Court, Northern District of Ohio that she did not submit to the Special Master prior to the R&R.

(ECF no. 17-2, PageID #: 2115)

Petitioner argues that because the authority, Trumbull County Juvenile Division states: "that no such records were created by Mr. Owen" then there has been no merit-based determination where the state has created an impediment to Petitioner bringing a claim. This alleged affidavit submitted by Rich Owen and notarized by the prosecuting attorney is conceded by the State to be non-existent. This Affidavit was crucial to the State Court's consideration because Mr. Owen stated that he had reviewed records from his facility; however, those records were never included in the record.

**Facts supporting Petitioner's claims he is entitled to both equitable tolling and an equitable exception based upon factual innocence where his conviction resulted from non-harmless constitutional error.**

Petitioner argued in the State Court and, as he argued in his Habeas Petition, that Preston Whitacre had confessed to Cassandra Boyles (Boyles) that he was the shooter. *See* [Affidavit[1]] (ECF no. 14-1, PageID #: 2083-2092)

Respondent argued that "the trial court reviewed sealed juvenile records[2] to confirm that [Preston Whitacre] P.W.—who supposedly told Cassandra Boyles that he was responsible for the murder- was actually serving time in a juvenile detention facility at the time of the murder in this case. Thus, the Boyles' Affidavit was a lie based on unreliable hearsay." (ECF no. 8, PageID #: 77) Unreliable hearsay is what the Respondent claimed Boyles' statements were even though Boyles could not be

---

[1] This Affidavit was presented to the State Court.
[2] Those records should have been included in this record.

determined to be lying because the records of P.W. were never shown to the defense, nor did those records become part of this record, which two Ohio Supreme Court justices (reasonable jurists) voiced their concern about this in their dissent. Again, the dissent recognized:

> {¶ 5} To support his claims of ineffective assistance of trial counsel and other constitutional deprivations, appellant, Austin Burke, submitted the affidavits of six other people, none of whom appear to have testified at Burke's trial. *Id*. at ¶ 23-34. Among the many factual issues raised in those affidavits is whether a different person had confessed to committing the primary offense for which Burke was tried and convicted: the aggravated murder of Brandon Sample. *Id*. at ¶ 2, 23. The trial court was apparently curious about the veracity of the affiant who had made that assertion, but rather than ordering a statutorily required hearing to test the veracity of the facts alleged, the court conducted an in-camera review of the juvenile-detention records relating to that alternative suspect, *Id.* at ¶ 9. The court did not allow the state or the defense to review those materials, despite their being central to the court's finding that the affiant's claim was not true. *Id*. at ¶ 35. The trial court similarly rejected every other affidavit as "problematic" and summarily denied Burke's petition for post-conviction relief without first holding an evidentiary hearing.

> {¶ 6} One of the worst injustices that we judges can perpetuate is to let an innocent person remain in prison. Although it is disturbing to think that a wrongful conviction might have happened on our watch, we cannot and should not be so quick to deny that possibility. Post-conviction proceedings are an important safeguard against wrongful convictions, and we need to ensure that petitioners are afforded a meaningful opportunity to attempt to prove cogent claims at evidentiary hearings. If a petitioner's claims appear to be true and an innocent person might be in prison, we need to set aside our dogged commitment to finality and make room to correct that injustice. The standards currently employed by Ohio's courts do not make such room.

*State v. Burke,* 162 Ohio St. 3d 1431, 166 N.E.3d 1245 (Donnelly, J., dissents, with an opinion joined by Brunner, J).

Petitioner argues that he has rebutted the correctness of the factual findings because the Court has relied on facts not in evidence. We cannot accept facts not in evidence because they are external to the record.

Further, to support Petitioner's request for an Evidentiary Hearing, he presents an Affidavit from Lori White. Ms. White initially provided an Affidavit but continued to dig into Preston Whitacre and converse with him on Facebook Messenger. If there is any doubt about the validity of the conversation, this Court should sua sponte subpoena the information from Facebook from both White and Whitacre's accounts. Ms. White gives a time frame for these messages so the subpoena would not be overly broad or unduly burdensome for Facebook to produce. Ms. White[3] states in her Affidavit executed on October 15, 2024:

> Comes now, **Lori Maria White**, who makes this statement and general affidavit upon oath and affirmation, subject to the penalty of perjury, to the belief and personal knowledge that the following facts, matters, and things set forth are true and correct to the best of her knowledge.
>
> I was born and raised in Trumbull County, Ohio. I graduated from Niles McKinley High School. I moved away for college, became a Critical Care Registered Nurse and now live in California. I still pay attention to the news and keep up with the happenings in Trumbull County.
>
> I remember seeing a news video on the murder case of Brandon Sample and hearing an interview with the prosecutor. He stated there was no forensic evidence in this case. Rather he stated it was testimony of young teens that led to Austin Burke's conviction. **This made me look into this case because my late husband was a prosecutor in Ohio.**

---

[3] Personal information will be supplied to the Court under seal.

Eventually, through learning more about the case, I reached out to Lisa Cope and Cassandra Boyles. These two women do not know one another. They both lived next door to Preston Whitacre's mother in a duplex, but at different times. These women relayed similar stories to me, in which Preston Whitacre told them and even demonstrated how he killed Brandon Sample, and blamed Austin Burke for it. After obtaining that information from Cope and Boyles I Initiated a Facebook messenger conversation with Preston Whitacre on November 19, 2022 at approximately 22:12 PST, through November 21, 2022, 1713 PST.

In my conversation with Preston, I told him that I knew his Aunt Pam Roupe had custody of him, who was living on Cherry Street in Niles, Ohio. This fact was revealed to me in prior conversations with Lisa Cope. Preston not only admitted to that fact but also agreed he was released from JJC in Trumbull County the Friday prior to Brandon Samples' murder on house arrest. He said that he had an ankle monitor and that "at least they knew everywhere I was"! During my conversation with Preston Whitacre, he said he was going to the police. Given the tone of our conversation it was to confess for killing Brandon Sample, then I cut off communication by blocking him on messenger. I have included the screen shots of the conversation with Preston Whitacre for evidence to support this statement.

I will appear and testify to the same.

(ECF no. 14-1, PageID #: 2083-2092) Affidavit or Lori Maria White with messages from Mr. Whitacre.

Ms. White did not know Austin Burke, had never met Mr. Burke, and had no motive to falsify information or evidence. She was previously married to a prosecutor in Ohio, Reginald Jay White, who was killed by a drunk driver.

The Magistrate determined Mr. Burke presents three Affidavits, one by Cassandra Boyles and two by Lisa Cope, identifying Preston Whitacre as having confessed to killing Brandon Sample. Evidence that another person has credibly

26

confessed to the crime contributes to demonstrating actual innocence. See *Sawyer v. Whitley*, 505 U.S. 333, 340-41 (1992). Further, the Magistrate determined:

> First, Ms. Boyles testified in her affidavit that Mr. Whitacre confessed to her sometime in 2017 that he assaulted and murdered Brandon Sample along with a co-conspirator, Ricky Roupe. (See id. at PageID 486). Ms. Boyles also recounted Mr. Whitacre telling her that "Austin Burke is the one going down for the murder." (See id.). Ms. Boyles added Mr. Whitacre told her the "last kid that tried to fight me got his pussy ass shot" and that the murder of Brandon Sample "was his work but that's what Austin [Burke] gets for being a pussy bitch." (*See id*.).

Text messages from White and Whitacre corroborate what Boyles had stated. Therefore, considering the Affidavit from White regarding these messages, the facts were presented to the lower court. Next, the Magistrate determined:

> Second, Ms. Cope testified in two substantially similar affidavits she heard from Mary Roupe, the aunt of Ricky Roupe, who heard from her mother, Pam Roupe, that several children had been fighting at Pam Roupe's house, including Preston Whitacre, and Pam Roupe suspected one of them had killed someone. (ECF no. 8-1 at PageID 498). In addition to Mr. Whitacre, the group of children included the victim, Brandon Sample; Ricky Roupe, the co-conspirator Ms. Boyles identified; and Joshua White.[4] (Compare id. at PageID 486 with id. at PageID 498).

The Magistrate's determination was an objectively unreasonable determination of the facts in light of the evidence. Further, the Magistrate determined and relied upon testimonial hearsay which rested on an external factor and was not part of the record.

> But any claim that Mr. Whitacre murdered Mr. Sample is foreclosed by an affidavit by Rich Owen, the Director of the Trumbull County Juvenile Detention Center, submitted by the State during the state post-conviction proceedings. Director Owen testified he searched the records of his facility in response to Ms. Boyles's affidavit and according to his records,

---

[4] No relation to Lori White.

27

"the juvenile that Cassandra Boyles claims stated to her that he had killed someone was in fact locked in our facility from June 6, 2017 through and including June 13, 2017." (ECF no. 8-1 at PageID 498). It would be impossible for him to have murdered Mr. Sample on the early morning of June 12, 2017.

Here, Preston Whitacre's admission in the text messages with Ms. White was that he had been released on an ankle monitor. Whitacre was not detained at the facility on the day of Brandon Samples's murder, and there is nothing to support that determination. His admission to Boyles was true if he was on an ankle monitor.

Petitioner argued the lower court could still hold an Evidentiary Hearing pursuant to *Stermer v. Warren,* 360 F. Supp. 3d 639 (E.D. Mich. 2018) aff'd, 959 F.3d 704 (6th Cir. 2020). Because factual findings based solely on the State Court record are subject to *de novo* review, *Northrop v. Trippett*, 265 F.3d 372, 377 (6th Cir. 2001), with the Magistrate stating, "These findings are presumed correct unless Mr. Burke rebuts that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)" Mr. Burke provided a rebuttal to the presumption of correctness of the State Court proceedings, thus, when evidence is outside the record, it is impossible to rebut.

**Ground One: The State Court's resolution of the illegally seized information of cell tower data was objectively unreasonable in light of *Carpenter v. U.S.,* 585 U.S. ___, 138 S.Ct. 2206 (2018) and previous decisions from the United States Supreme Court.**

The State Court's resolution of the illegally seized information of cell tower data was objectively unreasonable given *Carpenter v. U.S.*, 585 U.S. ___, 138 S.Ct. 2206

(2018). Petitioner maintains that the Ohio court's resolution of his claim was an objectively unreasonable determination of his claim on this ground, which entitles him to the Federal Habeas relief despite the Respondent's claims. Petitioner argued that because this claim was litigated before trial and prior to the United States Supreme Court's opinion in *Carpenter,* it must be applied to the instant action. Petitioner does not argue that *Carpenter* is retroactive but only that "a new rule of criminal procedure applies to cases on direct review, even if the defendant's trial has already concluded. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)." *Edwards v. Vannoy*, 141 S.Ct. 1547, 1554 (2021)

Respondent did not dispute that the State's reasoning was objectively unreasonable under *Griffith, supra,* that "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication." *Id.* at 322. "*Griffith* ended that practice and declared that new rules apply to all cases on direct review." *Id.* at 1554 n.2.

*Griffith* was not overruled, but in *Edwards*, it explicitly overruled the "watershed" rule of criminal procedure. *Teague v. Lane*, 489 U.S. 288, 311 (1989) (plurality opinion). As the Court explained, "in the 32 years since *Teague*, as we will explain, the Court has never found that any new procedural rule actually satisfies that purported exception." *Id.*

**Ground Two: The trial court erred in hearing a separate unrelated robbery with Petitioner's murder charge which was unduly prejudicial, and the state court's resolution of the claim was objectively unreasonable under 28 U.S.C. §, § 2254(d) (1-2)**

The Trial Court erred in hearing a separate, unrelated robbery with Petitioner's murder charge, which was unduly prejudicial, and the State Court's resolution of the claim was objectively unreasonable under 28 U.S.C. § § 2254(D) (1-2). Respondent argues this issue remains a non-cognizable challenge to a matter of state law. (ECF no. 8, PageID #: 111) Respondent argues "the state courts' decision is neither clearly contrary to, nor an unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. §2254(d)" *Id.* Respondent argues the Supreme Court has established the "harmless error" test as the standard to employ when determining the requisite "actual prejudice," holding that "an error involving misjoinder…requires reversal only if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'" Therefore, Respondent admits this claim is cognizable in Federal Habeas citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); and *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

Turning to the merit of Petitioner's claims. The misjoinder was unduly prejudicial, and further, the Ohio courts' opinion was objectively unreasonable under Supreme Court precedent and involved an unreasonable determination of the facts in light of the evidence. Petitioner argues the alleged offenses were unrelated, and being

30

tried together created undue prejudice as it infected the trial with fundamental unfairness. Notably, the prosecution admitted the multiple charges were confusing. According to the prosecutor's opening statement, "So I don't want to confuse you. But we've got the murder, the aggravated robbery, and the crimes related to the death of Brandon Sample. And then on June 20th, about eight days later, we have the robbery at Pizza Joe's." [Tr. at 178]

The mere fact that the State admitted the facts were confusing was an admission of a prejudicial joinder. Therefore, the State Court's opinion is objectively unreasonable, given United States Supreme Court precedent, because "[a] defendant is entitled to a fair trial but not a perfect one." *Lutwak v. U.S.,* 344 U.S. 604, 619 (1953); *see Hopt v. Utah,* 120 U.S. 430, 438 (1887) (quoting *Bruton v. U.S.,* 391 U.S. 123, 135 (1968)). That means a trial free of constitutional error.

None of the evidence from either incident would have been admissible in the trial of the other. Both indictments involved robbery charges, which invited confusion and did not establish the prerequisites required for a joinder of offenses. Petitioner argues that he is innocent of both offenses. There are no eyewitness accounts that Petitioner committed either offense, nor is there evidence presented to the contrary in State Habeas proceedings.

**Ground Three: The jury returned a verdict against the manifest weight of the evidence because the evidence is insufficient to establish Guilt beyond a reasonable doubt.**

The jury returned a verdict against the manifest weight of the evidence because the evidence is insufficient to establish guilt beyond a reasonable doubt. Respondent argues "Burke's Third ground challenges the sufficiency and weight of the evidence for his aggravated murder conviction. Only that portion challenging the sufficiency of the evidence presents a cognizable claim in this Habeas proceeding. To the extent that the Court views the sufficiency of the evidence claim as fairly presented and not time-barred, the reasonable state court rejection of this claim is entitled to AEDPA deference. (ECF no. 8, PageID #: 118) Petitioner argues that, as he did in his Petition, the State's resolution is not merely erroneous but objectively unreasonable.

While Respondent recognizes the correct standard to an insufficiency of the evidence claim because it looks past the fact that Petitioner's Federal claim is interwoven into the cases argued and cited by the Ohio Courts where Petitioner argued on Direct Appeal that his conviction was against the manifest weight of the evidence which means the reviewing court must determine whether the State has appropriately carried its burden of persuasion. *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997) (COOK and LUNDBERG STRATTON, JJ., concur separately).

Petitioner argues there was insufficient evidence, and any conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida*, 457 U.S. 31, 45, 102 (1982) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979), whether the claim is against the manifest weight or insufficient evidence, the fact issue is the burden

of persuasion. The claim of insufficient evidence invokes an inquiry about due process, and presents a question of law, the resolution of which does not allow the court to weigh the evidence. *Jackson v. Virginia*, *supra*; *State v. Sorgee*, 54 Ohio St. 2d 464, 377 N.E.2d 782 (1978); *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955). Petitioner states that this claim was asserted in his Habeas and clearly shows that the State Courts' determination should warrant Federal Habeas relief.

### Ground Four: Trial Counsel was ineffective under the Sixth and Fourteenth Amendments for failing to investigate and/or the evidence was unavailable.

Trial Counsel was ineffective under the Sixth and Fourteenth Amendments for failing to investigate Burke and/or the evidence was unavailable. Next was the Ohio courts' resolution of the Petitioner's claims, which rested on thin air. The Supreme Court of Ohio affirmed the denial of relief with two judges dissenting. *See State v. Burke,* 162 Ohio St. 3d 1431, 166 N.E.3d 1245 (Donnelly, J., dissents, with an opinion joined by Brunner, J). The dissent recognized:

{¶ 5} To support his claims of ineffective assistance of trial counsel and other constitutional deprivations, appellant, Austin Burke, submitted the affidavits of six other people, none of whom appear to have testified at Burke's trial. *Id*. at ¶ 23-34. Among the many factual issues raised in those affidavits is whether a different person had confessed to committing the primary offense for which Burke was tried and convicted: the aggravated murder of Brandon Sample. *Id*. at ¶ 2, 23. The trial court was apparently curious about the veracity of the affiant who had made that assertion, but rather than ordering a statutorily required hearing to test the veracity of the facts alleged, the court conducted an in-camera review of the juvenile-detention records relating to that alternative suspect, *Id*. at ¶ 9. The court did not allow the state or the defense to review those materials, despite

33

their being central to the court's finding that the affiant's claim was not true. *Id*. at ¶ 35. The trial court similarly rejected every other affidavit as "problematic" and **<u>summarily denied</u>** Burke's petition for post-conviction relief without first holding an evidentiary hearing.

{¶ 6} One of the worst injustices that we judges can perpetuate is to let an innocent person remain in prison. Although it is disturbing to think that a wrongful conviction might have happened on our watch, we cannot and should not be so quick to deny that possibility. Post-conviction proceedings are an important safeguard against wrongful convictions, and we need to ensure that petitioners are afforded a meaningful opportunity to attempt to prove cogent claims at evidentiary hearings. If a petitioner's claims appear to be true and an innocent person might be in prison, we need to set aside our dogged commitment to finality and make room to correct that injustice. The standards currently employed by Ohio's courts do not make such room.

Petitioner should be entitled to an Evidentiary Hearing in this Court because, 1) determining the factual issues with the newly discovered or ***newly presented*** evidence could not have been on the merits. The State Court determination cannot be presumed to be correct because nothing alleged to have been considered by the District Court is part of the record except the Affidavits presented by Petitioner. The critical point that must be considered is whether the State Court decided Petitioner's case on the merits because (1) AEDPA's highly deferential standard of review is triggered. Still, since the State Court determination was made on some external factor that does not appear in the record, it cannot be presumed to be on the merits. Petitioner argues that when a decision is not based on the merits, *de novo* review applies. *Stermer v. Warren,* 959 F.3d 704, 719 (6th Cir. 2020). Factual findings based solely on the State Court record are subject to *de novo* review. *Id.* at 720.

34

However, if a review of the State Court record shows that additional fact-finding was required under clearly established Federal law or that the State Court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the Federal Court can review the underlying claim on its merits. *See, e.g., Brumfield v. Cain,* 576 U.S. 305 (2015); *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007); *Fears v. Bagley*, 462 F. App'x 565, 574 (6th Cir. 2012). *see also, e.g., Cullen v. Pinholster,* 563 U.S. 170, 205, 131 S.Ct. 1388 (2011); (Breyer, J., concurring in part and dissenting in part) ("For example, if the state court rejection assumed the habeas petitioner's facts (deciding that, even if those facts were true, federal law was not violated), then (after finding the state court wrong on a [§ 2254](d) ground) [a federal habeas] hearing might be needed to determine whether the facts alleged were indeed true."); *cf., e.g., Hurles v. Ryan,* 752 F.3d 768, 790-91 (9th Cir. 2014) ("[W]here a state court makes factual findings without an evidentiary hearing or other opportunity for the petitioner to present evidence, 'the fact-finding process itself is deficient' and not entitled to deference" (quoting *Taylor v. Maddox,* 366 F.3d 992, 1001 (9th Cir. 2004), *abrogated on other grounds* by *Pinholster*, 563 U.S. 170));

Respondent argues "[h]owever, as the Ohio courts noted in postconviction, Burke has provided no "new" evidence demonstrating a lack of confidence in the outcome such "'that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" *McCray v. Vasbinder*, 499 F.3d 568,

572 (6th Cir. 2007) (quoting *Schlup*, 513 U.S. at 327). (ECF no. 8, PageID #: 72) Burke claims he has produced "new" evidence of his "actual innocence" *Id*.

Respondent attempts to dispute that the evidence presented was not due to Trial Counsel's failure to investigate. Respondent claims that "[n]one of the affidavits exonerate Burke of the crimes for which he was convicted. None provide exculpatory scientific evidence or trustworthy firsthand eyewitness accounts of the crimes committed." (ECF no. 8, PageID #: 72) Respondent argues that "a reasonable juror could conclude that the testimony of these proposed witnesses would not alter the verdict in that they, as family members, and friends of family all have a personal stake in exonerating Burke." *Id.* Petitioner argues that the purpose of a trial is to allow the fact-finder to determine the witness's credibility.

These people who wrote Affidavits contrary to what Respondent claims never knew Petitioner's family before the murder trial:

[*P25] Lisa Cope averred that on June 12, 2017, the day Brandon was reported missing, she had a conversation with Mary Roupe ("Mary"). Mary's mother, Pamela Roupe ("Pamela"), owns the home at which Brandon was last seen alive by certain witnesses at trial, including Pamela's grandson Ricky Roupe. According to Cope, Mary told her that Pamela was "flipping out" because, as Pamela had told Mary, "These kids here were all fighting, Mary, I believe they killed someone, what should I do?" Cope averred that she asked Mary all of the kids' names. According to Cope, Mary listed off six names that did not include Burke: "Ricky Roupe, Brandon Sample, [the juvenile from the sealed records], Josh White, and Mary Roupe's two nieces[.]" Cope averred that she asked Mary where the dead body was, and "Mary said her mother, Pam, told her, 'They went on a car ride.'"

36

Respondent argues that the Trial Court noted that the "Boyle, Cope, Cottrill, and White affidavits are not based upon personal knowledge. The affidavit of Gage Sell is only based in part on personal knowledge. The Affidavits of Jamie Sell are only based in small part on personal knowledge." (ECF no. 8, PageID #: 77)

Respondent argues that "the trial court reviewed sealed juvenile records to confirm that [Preston Whitacre] P.W.—who supposedly told Cassandra Boyles that he was responsible for the murder- was actually serving time in a juvenile detention facility at the time of the murder in this case. Thus, the Boyles' Affidavit was nothing, but a lie based upon unreliable hearsay." (ECF no. 8, PageID #: 77) The Respondent calls Boyles a liar, and her statements were hearsay. However, Boyles could not be determined to be lying, because the records of P.W. were never shown to the defense, nor did those records become part of this record, which the two Ohio Supreme Court justices in dissent voiced their concern about. Petitioner argues that he has rebutted the correctness of the factual findings of the Ohio courts.

### Ground Five: Prosecutorial misconduct for failing to correct testimony it would have reason to believe was false

Prosecutorial misconduct for failing to correct testimony it would have reason to believe was false. The Respondent disputes the claims raised by the Petitioner without the state court holding a hearing to determine the reliability of the witnesses. In Affidavit 4 of Jamie Sell, she stated that the robbery witness, Donavon Bunner, stated in messages to Jamie that he knew Petitioner was not the robber. In those text

messages, he also wrote that he had told prosecutors that Melanie Engle lied during her testimony. Nearly a half century ago, SCOTUS counseled prosecutors "to refrain from improper methods calculated to produce a wrongful conviction...." *Berger v. U.S.,* 295 U.S. 78, 88 (1935). The adversary system allows the prosecutor to "prosecute with earnestness and vigor." *Id*. Although "while he may strike hard blows, he is not at liberty to strike foul ones." *Id.* A State Court conviction based on prosecutorial misconduct must focus on due process violations. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974). A prosecutor may not present false testimony and must correct testimony they know to be untrue. *See Giglio v. U.S.*, 405 U.S. 150, 154 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959). "Misrepresenting facts in evidence can amount to substantial error because doing so 'may profoundly impress a jury and may have a significant impact on the jury's deliberations.'" *Washington v. Hofbauer,* 228 F.3d 689, 700 (6th Cir. 2000) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974)). Petitioner argues that he is entitled to a new trial because the false testimony "seriously affects the fairness, integrity or public reputation of judicial proceedings," *U.S. v. Atkinson*, supra; *U.S. v. Olano*, 507 U.S. 725, 736 (1993). These tactics employed by the State "casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice." *Brady v. Maryland*, 373 U.S 83, 88 (1963).

**Ground Six: Petitioner was deprived of his right to confront witnesses as the affidavits set forth material facts and demonstrate a denial of fundamental fairness.**

Petitioner was deprived of his right to confront witnesses as the Affidavits set forth material facts and demonstrate a denial of fundamental fairness. Respondent argues Petitioner "failed to ever present this issue to the Ohio courts, resulting in the unexcused procedural default of this claim." (ECF no. 8, PageID #: 132) Petitioner argues that the facts of the claim were presented to the Ohio courts, and Petitioner should be entitled to confront witnesses who prepared Affidavits because they presented material facts

Respondent argues that the post-conviction Affidavits presented by Petitioner were not exculpatory but concedes that the witnesses did not testify at trial and acknowledged that the declarations are not adverse to Petitioner. Petitioner argues that the Affidavits created a material issue and a reasonable probability that the outcome of the proceedings would have been different had a jury heard testimony from these witnesses.

**Ground Seven: Trial counsel was ineffective for failing to object to Juror Misconduct.**

Trial Counsel was ineffective for failing to object to juror misconduct. Petitioner argued in the Habeas Petition and stands by that argument because the Respondent has not resolved the issue with the juror, and the only way to do so is by granting a new trial. The counsel's failure to object was well outside the range of professionally

competent assistance. *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Determining whether a juror is biased or has prejudged a case is challenging, partly because the juror may have an interest in concealing their own bias and partly because they may be unaware of it. The problem may be compounded when a charge of bias arises from juror misconduct, rather than simply from attempts by third parties to influence a juror. *See Smith v. Phillips*, 455 U.S. 209, 221-222 (1982) (JUSTICE O'CONNOR, concurring). Due process is denied by circumstances that create the likelihood or the appearance of bias. *Peters v. Kiff,* 407 U.S. 493, 502 (1972). Showing actual subjective bias is not required to establish a due process violation. *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016). Petitioner argues that the error must be viewed as a structural error. Structural error is a defect in the constitution of the trial mechanism, which defies analysis by "harmless-error standards." *Riley v. Deeds*, 56 F.3d 1117, 1120 (9th Cir. 1995). An error cannot be both structural and subject to harmless-error review. *See Neder v. U.S.*, 527 U.S. 1, 8 (1999). "[A]n error has been deemed structural if the error always results in fundamental unfairness." *Weaver v. Massachusetts*, 582 U.S.___, 137 S.Ct. 1899 (2017).

## CONCLUSION

The Petitioner argues that this Court should conclude that a COA should be granted, as the claims involve constitutional error and should compel review of a non-

jurisdictional statute of limitations under either equitable tolling or an equitable exception.

Respectfully submitted,

s / DEBRA K. HAMPTON
DEBRA K. HAMPTON, OBA # 13621
Hampton Law Office, PLLC
3126 S. Blvd., # 304
Edmond, OK 73013
Phone: (405) 250-0966
Fax: (405) 896-4259
E-Mail: debbie@hamptonlaw.net
Counsel for Petitioner

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and the word limit of Fed. R. App. P. 32(a)(7)(B)(i); excludingthe part of the document exempted by Fed. R. App. P. 32(f), this brief contains no more than 9,709 words. This document contains 9181 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of  Fed. R. App. P. 32(a)(6); because this document has been prepared in a proportionally spaced typeface using MicrosoftOffice Word 2016-word processing program in Times New Roman 14-point font.

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 6 Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3)  The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, VIPRE, Software version 12.0.2.220, Version 110294, last updated 4/07/2025, and according to the program, is free of viruses.

s / DEBRA K. HAMPTON
DEBRA K. HAMPTON, OBA # 13621
Hampton Law Office, PLLC
3126 S. Blvd., # 304
Edmond, OK 73013
Phone: (405) 250-0966
Fax: (405) 896-4259
E-Mail: debbie@hamptonlaw.net
Counsel for Petitioner

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Entry of Appearance and Certificate of Interested Parties was electronically filed with the Clerk of this Court on April 7, 2025, and for electronic transmission to:

Stephanie L. Watson
Assistant Attorney General
Stephanie.Watson@Ohioago.gov

/s/DEBRA K. HAMPTON
DEBRA K. HAMPTON